Mr. Carpenter, please proceed. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter, appearing on behalf of Mr. Jose Arribas-Rivera. This case deals with the question of whether or not a VA regulation, specifically 3.156C2, can be applied retroactively. The Veterans Court, we believe, relied upon a misinterpretation of that regulation when it applied it retroactively or allowed the Board to apply it retroactively in this case. Why is this even a case that involves that regulation? Doesn't that regulation... I'm sorry? Why is this a case that even involves that regulation? Doesn't that regulation expressly apply to claims for reconsideration? Yes, it does, Your Honor. All right. And how is this a claim for reconsideration? I mean, isn't this a new claim? No, Your Honor, it's not a new claim. Well, whether the 2007 claim was a new claim is not relevant to the application of 3.156C. Why? But the Board expressly found that this was a new claim, and you agree that's a fact-finding over which we have no jurisdiction, correct? I do, Your Honor. So the Board found this is a new claim over which we have no jurisdiction, and the regulation says this is a case that will be applied when the former decision will be reconsidered. So if the Board found, as a matter of fact, this is a new claim, and we have no jurisdiction to review that conclusion, and the regulation only applies to reconsideration of former decision by its own words, what is there for us to do in this case? Because what is to be reviewed upon reconsideration is Mr. Arivas Rivera's 1980 claim. This has nothing to do with reviewing that subsequent claim. In fact, the subsequent claim should not have proceeded under the correct application of this regulation. But he never made a motion to reconsider or reopen the 1980 claim, did he? No, he did not. And this is a remedial regulation, which we do not believe requires that, but requires the VA to take the affirmative responsibility when they, as they did in this case, receive supplemental service department records that had not been considered at the time of the VA's first decision. In his 1980 claim, did Mr. Arivas Rivera claim PTSD or present a diagnosis of PTSD? He described what would be considered post-traumatic stress disorder. I believe he called it delayed stress something or other, and described that it came from his experiences in combat. There is no record of a diagnosis having been made, but I would direct the Court's attention to the fact that this decision was made on March the 7th of 1980, and was disposed of by the VA on March the 27th. There is no indication that there was ever an examination of Mr. Arivas Rivera to determine whether he did or did not have that condition. There is a no VA examinations provided a diagnosis of mental disorder, but there was no mental disorder examination conducted in this case. Was it reasonable to expect the VA to screen battalion records without any guidance from the appellant to find evidence of in-service stressors? In 1980, I believe it was, Your Honor. There was no requirement in the regulation at that time that the veteran provide that additional information. That didn't happen. But he has never made a claim, and you haven't made a claim, that there was some error committed at the time because of a failure to provide for a medical review. Oh, no. No, there was not, Your Honor. So the problem is, even if I agreed with you that he gave them enough information to know what medical records to look for, I mean service records, when we're only talking about four months of combat, the problem is that there still would not have been a diagnosis of PTSD. But the diagnosis would be attendant upon the reconsideration. Yes, there was no diagnosis. But you didn't, in the reconsideration, you never said that there was error because of failure to actually provide a medical evaluation. No, what was requested in accordance with 3.156 was reconsideration under the terms and provisions of that regulation. Okay, I can look at his service records until I'm blue in the face, and what is that going to tell me about his actual medical diagnosis? Well, the government included in the joint appendix the provisions of the then manual for rating practices and procedures, pages 158 to 160. And in those pages, they describe post-traumatic stress disorder and its specific relationship to combat. Now even if there was an examination, that examination would have been required to deal with those requirements as specified in that provision. Now if the service medical records showing that he was in combat were not available to the examiner, it would not have been possible for that examiner to have complied with that rule. Now I suppose there is a pending question as to whether or not that manual provision has any effect of law, but certainly in 1980, that was the way in which it was relied upon and that's why the government has included it in the joint appendix. Because that was the procedure for determining whether or not a person suffered from post-traumatic stress disorder. Now there is, as I say, no indication that there was ever an examination conducted. So we don't know whether or not these manual provisions were or were not applied by the examiner because we have no examination. But there was nothing in the record at that time. But the point of 3.156c is to trigger affording the veteran a new consideration of his original claim. And the language of 3.156c is that it will reconsider the original claim. A claim that was decided without the benefit of relevant service department records. These are clearly relevant service department records because they confirm that he was in combat or his unit was in combat. I'm sorry, Mr. Carpenter, I thought that this was in the context of a request for an earlier effective filing date for the award of PTSD that stemmed from the 2007 diagnosis. I thought that this entire case was framed as we're entitled to an earlier effective filing date for this claim of PTSD. Am I mistaken? I don't know whether you're mistaken, Your Honor, but I believe that it was mistaken to have framed it that way. The operation of 3.156c does not relate to a new adjudication. 3.156c only discusses the reconsideration of the original claim. I'm sorry, did you not seek an earlier effective date in this case? Is that not what you were pursuing? Yes. So wait, so an earlier effective date is for the claim that he was awarded benefits for, PTSD, correct? They are inextricably linked, are they not? They are, Your Honor. So once again, it goes back to the original question I asked you. If the original PTSD claim is a different claim, even if I grant you that it's an original PTSD, if it's a different claim than this claim, and on this claim you're seeking an earlier effective date, that is the context of this dispute as I understand it, then I'm still struggling with why 3.156c applies at all, even if I give you the retroactive application of the one that was in place at the time, because it's talking about reconsideration of decisions, and the Board found these are two different claims. In the original version of 3.156c, the relationship to effective date for a later award was not clear. When the VA amended the regulation, they separated it out into three specific subsections. Under subsection one, it is reconsideration. Under subsection two, it is a provision to preclude reconsideration. It is not until you get to subsection three that you get the consideration of the earlier effective date. Under subsection seven and eight of your blue brief, you quote 3.156c and emphasize this provision is not applicable, where there was no administrative error because the records were not reasonably identified, and it seems to me that you concede that you'd lose under that provision if it was, but you say it's not applicable. No, I don't believe that would, I'm sorry, if I left the court with that inference, I apologize. The point was that that's what the provision calls for. I did not mean to concede or imply a concession that it would have been correctly applied now. You say, well, this is a correct interpretation of 3.156c2. It is correct only as of the date it was published. And I'm sorry, what I was trying to say was, is that the preclusive effect of having not provided the information did not exist at law until the VA amended that regulation. In 1980, 38 CFR 4.126 provided, quote, it must first be established that a true mental disorder exists, and also, quote, that the disorder will be diagnosed in accordance with the American Psychiatric Association manual. Correct. In Young v. McDonald, we said there is no question of retroactivity here because a medical diagnosis of PTSD was required to establish the veteran's entitlement, and the Veterans Affairs Court did not err in approving the board's decision to assign an effective date, so on. Now, given that what you're asking appears to be that the VA searches his records without any pointer to where they should be going, his unit records, how on earth could you make that argument? Well, because, Your Honor, that's precisely what the Secretary said was the entire reason that he promulgated this regulation. The regulation was created for a single objective, to cure an administrative deficiency when the VA did not, in its original decision, do precisely that, search the records to get all relevant service records. And when they fail to get those relevant service records, then the provisions of 3.156c are available to the veteran downstream at some later date when the records are produced and the VA receives them. At that time, the provisions of now 3.156c1 go into effect and require reconsideration because there was an administrative deficiency in the VA having not done exactly that. So you're saying without even a request for reconsideration, that there is an affirmative obligation to engage in the exercise under the regulation? I'm sorry, I didn't get the first part of that. Without a request for reconsideration? Yes. Yes. Yes. Okay, Mr. Carpenter, would you like to say something? I would, Your Honor. Thank you very much. Mr. Rosenberg, please proceed. May it please the Court. The Court is picking up on one of the essential problems with this appeal, which is the dispositive fact finding below that the 2007 claim was a new claim that did not encompass the 1980 claim for PTSD. A new claim, by definition, cannot trigger any reconsideration under 3.156c. And consequently, Mr. Rivas-Rivera was not entitled to any relief under that regulation because the regulation, as the Veterans Court found, was not for application. The Court could affirm on that basis alone. But if you look at c1, it says notwithstanding any other section in this part, and then it just proceeds on what the VA is supposed to do if it gets new information. Isn't that enough to just say that if there's any claim out there, even if there hasn't been a motion for reconsideration of it, that the regulation applies? 3.156c refers to a decision on a claim. And the only decision on a claim in this case prior to the claim filed in 2007 was a claim for a nervous disorder. So unless Mr. Rivas-Rivera was seeking reconsideration of a claim for a nervous disorder, which the Veterans Court found he was not, then 3.156c is not implicated. Was it a claim for a nervous disorder or a claim for a delayed stress reaction? Mr. Rivas-Rivera used the phrase delayed stress reaction in describing a physical ailment of cervical myositis, which is muscle weakness in his neck. What the RO did was liberally construe what appeared to be a claim focused on a physical ailment and found in that claim for a physical ailment a claim for a nervous disorder, which was one of the psychoneurotic disorders that would support a claim for service connection. They looked at his service medical records and they looked at an August 79 medical examination. A delayed stress reaction, those are the words he uses and he puts them in quotes, I think that means he's trying to identify something in specific in his filing below, in the 1980 filing. A delayed stress reaction doesn't seem to me like a nervous condition, right? He mentions earlier how he's always been a nervous person, but then he says that he has a delayed stress reaction, a condition that also affects ex-military members from the Vietnam War. Do you think that is properly interpreted as a nervous condition? Well, the interpretation of his claim is vested in the VA and so the court under 7292 D2 probably should not be looking beyond the factual findings of the board in the Veterans Court. But if the court is going to look specifically at the claim that he filed, it's very clear the connection between this delayed stress reaction and the physical ailment. It is not characterized, and I don't think the VA was wrong in construing it, not to allege a post-traumatic stress disorder type claim. He says, I'm always a nervous and anxious person, and that language, that word nervous is teased out of the claim and appears in the rating decision. If the court looks at the diagnostic codes in section 4.126, which were in place at the time of the claim, there is no nervous disorder. There's anxiety neurosis and a bunch of other psychonautic. What about Mr. Carpenter's argument that in 1908, what the general practice was to do is to look at the stressors to which the claimant was exposed before assessing whether or not that what the nature of the stress claim is. So the problem with that argument is that if we were looking at this under the framework for establishing a PTSD claim, the very first part of establishing a PTSD claim is a diagnosis of PTSD. The second part of that claim is identifying an in-service stressor and then verifying the in-service stressor. Now you could have PTSD. Is it PTSD? I mean, we've gone through this so many times with veterans cases. PTSD is partially diagnosed by the circumstances that the individual faced. I mean, you can't figure out if someone has PTSD until you understand that there have been stressors to which they've been exposed. That's precisely right. And it's possible that Mr. Ribas Rivera could have been diagnosed with PTSD in 1980 on the basis of a stressor that would support a diagnosis of PTSD that had nothing to do with his service in Vietnam. So he could have had a diagnosis in 1980 of PTSD based on some other trauma he suffered in his life independent of his service in Vietnam. And he would have had a diagnosis of PTSD in 1980. The next part of the analysis would be to determine whether the PTSD was caused by an in-service stressor. That's the second part of the analysis. No, no. The analysis is an overall analysis of stressors to which one was exposed and their reactions to the various stressors. So you can't say he has to be diagnosed from non-service stressors and then go and see if there was a service stressor. That's backwards. I don't mean to imply that there has to be some non-service stressor to support a PTSD diagnosis. What I'm trying to say is, isn't it true that the way the VA starts is with indicia? That is to say, inability to sleep, startle reactions, fear of crowds. There's a list of indicia for PTSD. And if somebody comes in and says, jeez, I startle when somebody walks into the room or I'm afraid to be in a crowd or those kinds of things, they say, huh, looks like you have PTSD. What kind of exposures did you have? That's what you're saying, in effect, isn't it? What I'm saying is that a PTSD diagnosis depends not only on the stressor, but as Your Honor is mentioning, an array of symptomatology that's consistent with that diagnosis. And symptoms can overlap between different kinds of neuroses. So when Mr. Ybus Rivera presented for a complete medical exam in August of 79, and they found no psychoneurotic or neurological problems with him, that would have encompassed any symptomatology that he presented with at that time. And that symptomatology might have been consistent with PTSD, it might have been consistent with something else, but the conclusion made by the medical professionals was that he had no psychiatric disorder at that time. That was very close in time to the time he filed his March 1980 claim. So back to Your Honor's question, I don't mean to imply that Mr. Ybus Rivera had to show that he had PTSD independent of his service in Vietnam. What I mean to say is when he presented for a complete medical exam in 1979, and the medical professionals had no reason to diagnose him or suspect that he had a psychiatric disorder, there was no need to go to the second part of the analysis of establishing service connection with PTSD, which would be to verify that an insert of stress would occur. But when you say that he had no reason to diagnose him, he reports, the symptoms he reports is tense, nervous, tired, irritable, depressed, and then he calls it a delayed stress reaction, a condition that also affects ex-military members from the Vietnam War. Hard for me to imagine that those doctors had no reason, as you just said, to diagnose him with PTSD, according to this record. Respectfully, Your Honor, I think the RO did correctly and liberally construe the claim for cervical myositis to be principally focused on the claim for a physical disorder. And liberally construing that claim for physical disorder, identified this claim for a nervous disorder and found no evidence to support a claim for nervous disorder, and on that basis denied the claim. And this is a very important aspect of this case because the application of subsection C1 turns on whether later associated service records remedy a defect in the original claim. No, it doesn't say, does it remedy a defect in the original claim? It says, is it associated with the original claim? That's all it says. And then you've got to go back and look. And so it doesn't say, does it remedy a defect in the original claim? That's new words that you've interpreted into the statute. That language, Your Honor, comes from the court's decision in Blue Ball and as applied in the court's decision in Kaiser. So in order for C1 to apply, the later associated service records have to in some capacity remedy the defect in the original claim in order to trigger some kind of relief under C1. So Mr. Arepas Rivera's later associated service records, which were used to verify a stressor, which the Veterans Court found and the court found, he did not identify until 2007, did not provide the diagnosis that was found to be missing in 1980 and which served as the basis for denying his claim in 1980. So under the application of Blue Ball and Kaiser, the later associated service records didn't remedy the defect and consequently, again, subsection C was not for application. I'm curious about the standard by which we are bound on factual issues. If a veteran presents to the VA for PTSD and they say, well, you couldn't because you were never in combat and the veteran says, well, here's my purple heart and I'm missing a limb and the purple heart says this was awarded for losing his limb, are we bound by the VA's finding when it's simply clearly false? As unpleasant as that might seem under 7292D2, the answer to that is yes. One would hope that the board wouldn't make a factual finding like that in the face of what seems to be compelling evidence of an in-service injury and if it did, that the Veterans Court would correct a clear error of fact on appeal to the Veterans Court. But on appeal from the Veterans Court to this court, 7292D2 does restrict the court's ability to look at factual findings and if there's some dispute about whether that factual finding is correct or not, that's precisely why 7292D2 prevents the court from applying law to those facts. In this case, in 1980, the issue of combat or in-service stressor was not an issue in the adjudication of this claim. Again, the claim was denied in 1980 because he had no diagnosis of any psychiatric disorder whether you characterize it as an anxiety neurosis or nervous disorder or delayed stress reaction or PTSD. There was no diagnosis to support the claim. The claim wasn't plausible and that's where the analysis ended. And so we have to accept that is what you're saying even if, if they looked at these service records and realized he'd been in combat for four months, that the indication of the potential for stressors would have been even stronger. Your Honor raised a good question earlier about whether there's any allegation that the VA should have provided a medical exam in the face of the allegation of a delayed stress condition. That sounds like a Q claim, but this is not a Q claim. And if it were a Q claim, it would be subject to a very high standard that Mr. Rivas Riera wouldn't be able to satisfy. But it's conceded that they're not presenting that kind of argument. The question is, when he has, when he alleges some symptomatology that may or may not be a reason for the VA to grant service connection for a nervous disorder in 1980. In the absence of a diagnosis under subsection 4.126, without a diagnosis of a mental disorder, you can't have a claim for mental disorder. Finally, the court hasn't asked any questions about retroactivity, but there simply is no Mr. Rivas Rivera filed his original claim in 1980 before the regulation was amended. He never exercised his right to seek reconsideration until after the regulation was amended in 2007. So when Princess Cruz talks about an impairment of vested rights, Mr. Rivas Rivera certainly had a right to reconsideration between 1980 and 2007. Are you suggesting to me that if I, even if no one brought it to my attention, if I realized that the board was applying the wrong law, while it was not in effect at the time, and it was materially different from the law that ought to apply, that I am somehow bound, regardless of when or if anyone brought it up, that I am bound to continue to accept the wrong law on appeal? Your Honor. I don't have the right to sua sponte say, time out. You applied the wrong law. Go back and fix it. This goes beyond some realization. Answer my question. Are you telling me as a judge on an appellate court, I don't have the right to tell a lower tribunal it applied the wrong law? No. No, Your Honor. I don't have that right? No, I'm saying you do have the right. I'm not disagreeing with you. Okay. So then what does it matter whether he likewise told them to apply the wrong law? If I think they applied the wrong law, I can send it back, regardless of whether below he acquiesced in the wrong law being the appropriate one. Your Honor, your question seems to be going to the argument on waiver, and I'm making a different point, which is on the actual application of Princess Cruz's. So if the court gets beyond our argument that the argument is waived, applying Princess Cruz's, what we're saying is there is no retroactivity problem. That Mr. Rebus Rivera didn't seek to exercise his right to reconsideration until after the regulation had changed, and consequently, there was no impairment of any vested right to reconsideration. It's distinct from Klein, and it's distinct from Mayhew, because in those cases, the claimants filed their request for reconsideration and got service connection before the regulation was amended, and during the pendency of their appeal, the regulation changed and subsequently was applied to them. And in Klein, the Veterans Court found that that was an improper retroactive application of the law. Even if we agreed with your retroactivity analysis, which I'm not sure that I do, I don't understand how the veteran could have done more in terms of pointing the VA to veterans' records than to say, I was in combat for a four-month period in Vietnam. I mean, how hard is it for them to pull those service records? I mean, you know, the notion that he's got to say something more detailed to satisfy that regulation, I think, is completely illogical. That, Your Honor, respectfully involves an application of law to fact, but it ultimately doesn't resolve the principal defect in his claim in 1980, which was the absence of a medical diagnosis. So, at the risk of being repetitive, the reason why his claim in 1980 was denied was because he didn't have a medical diagnosis, and the later associated service records do not provide the diagnosis that was found to be missing in 1980. Wouldn't it be automatic if someone says, I was in combat, to say what unit? I'm afraid I don't know the answer to that question. But in evaluating a claim for PTSD or any other psychoneurotic disorder, the first step of the analysis is, is there a diagnosable psychoneurotic disorder, and then to determine service connection. All right. Thank you very much. Thank you, Your Honor. Mr. Carpenter, do you have some rebuttal time? I'd only like to focus on one matter, Your Honor, and that's the notion that the government has asserted here that the veteran, or any veteran, is required to exercise his right to reconsideration under 3.156C. I see no such language in 3.156C, either in the amended version or in the prior version, the original version. Even if that's true. Even if we agree with you on retroactivity, or even if it is retroactive, that we agree with your interpretation and not the government's interpretation of the statute, we still have the medical diagnosis problem. And why shouldn't this have been a Pew claim as it relates to the failure to provide a medical evaluation? Because there was no decision by the VA in which to file a Pew claim. The only decision of the VA would have been the 1980 decision. That's what I'm talking about. Well, but the only decision, or excuse me, the only attack would have been a duty to assist violation, which this court has held is not sufficient to support a request for revision. Now, ironically, in the Cook case, there is some discussion about that might be different for duty to assist when it relates to service records. But ultimately, the point is that there is nothing in this record to suggest that there was an attempt to make a diagnosis. There is a reference in the decision to examinations that took place, as the government admits, for non-psychiatric claims. Why would a non-psychiatric evaluation give a psychiatric diagnosis? This claim, which was received after the original physical claims were adjudicated, this claim in March of 1980 was for the delayed stress description that he offered. At that juncture, the VA had an obligation to get his full service records. But again, all the service records in the world, how does that change the failure to have given him a full medical evaluation for emotional stressors? Because of the precise requirements that are in the record at 158 and 159 that describe how you diagnose post-traumatic stress disorder, which goes to the events that the veteran experienced. And if that information was not considered by a psychiatrist, then there was no way to meet that test as outlined in their own manual. Thank you very much. I have one last question. Oh, sorry. You've been around this block 10,000 times. I just want you to make me feel better. When somebody says to the VA, I was in combat in this war, they do ask them what unit you were in, don't they, as a standard practice? Frankly, Your Honor, it depends on when they ask that question. The closer to Vietnam, the less likely that was for that question to be asked. There was tremendous resistance until the APA adopted the diagnosis, and for the first half-dozen years or more, that was not a question. But in this case, I would point out that his DD-214 does appear to be in there, and it shows his unit. Of course it does. Okay. Thank you very much. The full case is taken under submission.